

# WELLINGTON®
## Orthopaedic & Sports Medicine

Corporate Office • 4701 Creek Road • Cincinnati, Ohio 45242 • 1-800-323-0912 • www.wellingtonortho.com
☐ Blue Ash 513 733-8894 • ☐ Eastgate 513 753-7488 ☐ Union Centre 513 645-2220 ☐ Western Ridge 513 245-2500
☐ Anderson Five Mile 513 232-6677 • ☐ Sardinia 800-269-2308 • ☐ Oxford 513-524-1018

April, 22 2020

Ms. Chapin Elizabeth Scheumann
Attorney at Law
401 West Main Street, Suite 1600
Louisville, Kentucky 40202

**Re: Woods v. Target**

Dear Ms. Scheumann:

I received your correspondence dated 1-6-20 regarding Larry Woods v. Target Corporation. Included with our correspondence were medical records regarding Mr. Woods and his treatment. Listed below are the medical records which I have had the opportunity to review. Following my review of these records I will outline my opinions with respect to any injury Mr. Woods may have sustained at the time of the subject injury.

The medical records include:

1. The Guest Incident Report regarding the reported event of 11-27-17. The incident was reported to the store on 11-30-17. The description describes that Mr. Woods said that he was walking toward a door and slipped and caught himself on a freshness packet from a box that had been on the floor. From this event he said that he injured his right leg and his low back.

Robert Heidt, M.D., 1925-2011 • Dale Fox, M.D., 1909-1995 • Donald Frank, M.D., 1958-1992 • Michael Welch, M.D. • Edward Miller, M.D., Emeritus
Robert Heidt, Jr. M.D. • Mark Snyder, M.D. • James Plettner, M.D. • Stephen Dailey, M.D. • Kevin Reilly, M.D. • Denver Stanfield, M.D. • Arthur Lee, M.D.
Brad Wenstrup, D.P.M. • Robert Rhoad, M.D. • Ronald Hess, D.O. • Paul Favorito, M.D. • Charles D. Miller, M.D. • Matthew M. McLaughlin, M.D.
F. Clifford Valentin, M.D. • Gordon H. Yun, D.P.M. • James R. Leonard, M.D. • Brent Miller, D.O. • George T. Shybut, M.D., • K. Premanand Nayak, M.D., Emeritus
Suresh Nayak, M.D. • John C. Linz, M.D. • Joel I. Sorger, M.D. • John P. Zisko, M.D. • Christopher J. Ruhnke, M.D • Brian K. Crellin, D.O. • Brian A. Rottinghaus, M.D.

April 22, 2020
Page 2
Ms. Scheumann

Re: Woods v. Target

2. Records regarding this man's examination and treatment at his primary care office dating between 9-5-14 and 12-5-17. On 9-5-14 the patient was seen for medical issues. He was also seen on a few other occasions before the incident in question, again from a medical perspective.

Of importance with respect to the orthopaedic history is that the patient was seen on 3-16-16 complaining of low back pain. The diagnosis was made of right sciatica. He was started on medications for these complaints.

The patient was seen again on 4-4-16 in follow-up for his back pain. Again, the diagnosis was made of right sciatica and x-rays were ordered for the lumbar spine, as well as for physical therapy and continuation of medications.

The first visit after the accident in question dates 12-5-17. The diagnosis at this point was chronic back pain greater than three months. The history was obtained that he had had the onset of back pain in a persistent pattern for one week.

An examination was performed. The patient was not in any acute distress. The sensory examination was normal. He had normal range of motion of the lumbar spine. Again, medications were prescribed.

3. Records from the orthopaedic surgery office of Dr. Lonnie Douglas regarding examination and treatment of this man between 2-15-18 and 6-28-18.

April 22, 2020
Page 3
Ms. Scheumann

Re: Woods v. Target

Reference was made to the 11-27-17 reported incident where the patient sustained right knee pain after a fall. He said that he had fallen at a retail establishment and felt like his leg had swelled up afterward. An MRI scan reportedly demonstrated a strain to the anterior cruciate ligament and a posterior medial meniscus tear. An examination was done and the patient received a corticosteroid injection for the diagnosis of, "Right knee pain and a medial meniscus tear."

The patient returned on 3-29-18 and the decision was made to pursue arthroscopic surgery. Surgery was performed on 4-30-18 and the patient was seen in follow-up on 5-17-18. He was referred to physical therapy.

By 6-28-18 it was felt that the patient was doing well, now eight weeks status post his arthroscopy. He was recommended to continue his home exercises and follow up as necessary.

4. The operative report and associated medical records regarding this man's surgery of 4-30-18. The pre-operative and post-operative diagnosis states, "Right knee medial meniscus tear." The procedure states, "Right knee arthroscopic partial medial meniscectomy and abrasion chondroplasty." In the body of the report it was noted that the patient had Grade II to Grade III chondromalacia throughout the knee and a complex medial meniscus tear. The ACL and PCL were evaluated and found to be intact.

5. Records from PMC regarding visits with several caregivers at this facility for pain management dating between 12-20-17 and

April 22, 2020
Page 4
Ms. Scheumann

Re: Woods v. Target

1-19-18. The patient was complaining of mid-back pain, low back pain, right leg pain, and sleep disturbance. The history was obtained regarding the 11-27-17 slip and fall event.

A physical examination was done on 12-20-17. It was noted on the lower extremity examination that the patient's knees were non-tender and were stable with anterior and posterior Drawer, as well as Varus testing. The straight leg raise test was negative bilaterally. Sensation, strength, and reflexes were all noted to be normal. The patient was placed on medications. He was then seen on several subsequent occasions in the ensuing several weeks with repeated documentation of normal knee examinations, normal strength, normal sensation, and normal reflexes. The first reference to any sort of right knee pain came on 12-26-17.

6. Medical records from the office of Dr. Abdullah regarding treatment dating between 12-3-19 and 1-10-20. The patient was seen essentially for medical issues. Reference was made to his previous knee surgery and that he was on disability for back pain.

7. The letter from the office of Dr. Brett Cascio to Mr. John Bruce. This is a non-dated letter. Dr. Cascio outlines his opinion that this man's knee surgery was related to the subject event of 11-27-17. He also felt that he had sustained a low back injury necessitating treatment.

8. The office notation from the orthopaedic surgery office of Dr. Chalily dated 1-7-20. The patient was seen with respect to his right knee. Symptoms had reportedly been present for about a

April 22, 2020
Page 5
Ms. Scheumann

Re: Woods v. Target

year. It was felt that he had arthritis of the knee and received a corticosteroid injection.

9. The knee x-ray report dated 2-15-18 reports, "No plane film abnormalities appreciated to clearly account for the reported pain."

10. The right knee MRI scan report from MRI Louisville dated 12-22-17 reports, "1. Anterior cruciate ligament strain. 2. Oblique tear posterior horn medial meniscus extends to inferior articular surface."

11. The MRI scan report of the lumbar spine from MRI Louisville dated 1-26-18 reports, "1. Non-specific straightening normal lumbar lordosis consistent with strain in the appropriate clinical circumstance versus secondary to compressive discopathy L3-S1. Recommend clinical correlation. 2. L3-4: 7-8mm broad-based posterior disc protrusion effaces the ventral surface of the thecal sac resulting in moderate to severe right and moderate left neural foraminal encroachment and bilateral exiting L3 nerve root impingement in conjunction with facet arthrosis. Moderate canal stenosis is seen. 3. L3-4: 7-8mm broad-based posterior disc protrusion with focal disc extrusion traveling 12.7mm to a cranial direction effaces the ventral surface of the thecal sac resulting in moderate to severe right and left neural foraminal encroachment and bilateral exiting L4 nerve root impingement in conjunction with facet arthrosis. Mild canal stenosis is seen. 4. L5-S1: 11-12mm right paracentral posterior disc protrusion effaces the right lateral recess and ventral surface of the thecal sac resulting in

April 22, 2020
Page 6
Ms. Scheumann

Re: Woods v. Target

moderate to severe bilateral neural foraminal encroachment and bilateral exiting L5 nerve impingement."

12. Physical therapy records regarding physical therapy treatments this man received at University Medical Center University of Louisville dated 5-23-18 through 6-8-18.

13. The deposition of Larry Woods taken 11-13-19 which outlines this man's personal history, job history, and education. He then goes on to describe the incident in question and his understanding of subsequent treatment thereafter.

14. I had the opportunity to personally review the x-rays of the right knee obtained from the University of Louisville dated 2-15-18. The patient demonstrated some early degenerative changes consistent with his age, but no other significant findings and no acute findings are noted.

15. I personally reviewed a CD of the lumbar spine from MRI Louisville dated 1-26-18. This study demonstrates multi-level degenerative disc disease from essentially L3 through S1. At each of these levels the patient has significant disc protrusion, degenerative sclerosis of the endplates, and neural foraminal compromise. This is particularly true at the L4-L5 level. These are essentially bilateral findings, but generally speaking more severe on the right than on the left.

In review of the aforementioned medical records and the Guest Incident Report, it would appear that the patient claimed an injury on 11-27-17 and then went back to the store to report it three days

Re: Woods v. Target

later, on 11-30-17. He described slipping on a freshness packet from a box. It should be noted that there is no record that I saw regarding any sort of evaluation or treatment of this patient between 11-27-17 and his visit with his primary care physician approximately eight days later. The primary care physician actually describes this as chronic back pain of greater than three months duration. This, of course, is due to the fact that the patient had established pre-existent low back complaints dating back to 2016 which required evaluation and treatment. He had the diagnosis of right sciatica made again in 2016. It would appear from this record that he did potentially sustain a temporary aggravation of his chronic low back pain due to the event in question. However, it does also need to be realized that there is no indication of any sort of acute disc herniation or abnormality. I would specifically reference the fact that the patient had a normal sensory examination and normal range of motion of the lumbar spine. He did describe pain with range of motion which would be at most a mild muscular strain superimposed upon his multi-level degenerative disc disease. Therefore, the absolute most injury that this man sustained to his low back would have been a mild lumbar strain superimposed upon a history of degenerative disc disease and right sciatica.

It is also important to realize that the patient was seen at a pain management office on several occasions between 1-20-17 and 1-19-18. What is important in these records is that the patient did not demonstrate at any point in time any sort of acute new radicular abnormality. I would specifically reference several

April 22, 2020
Page 8
Ms. Scheumann

Re: Woods v. Target

statements made regarding negative straight leg raise examinations, normal sensation, normal deep tendon reflexes, and normal strength. This is important because the patient does have many levels of degenerative change involving the lumbar spine. If the patient had sustained a new significant injury to the lumbar spine, he would have had radicular type symptoms. In other words, the findings that were noted on the MRI scan of 1-26-18 were all chronic in nature. If they had been acute, the patient would have had clinical symptoms of some sort of nerve root compromise which again was <u>not</u> present.

Obviously, Mr. Woods had a history of low back pain that required treatment long before the incident in question. The incident in question temporarily aggravated the problem and would have potentially caused treatment being necessary for a window of time between one and three months. He then would have returned to his pre-injury baseline of multi-level degenerative disc disease with no specific finding relatable to the event of 11-27-17.

The other issue involving Mr. Woods, of course, is the right knee. Obviously, Mr. Woods did not seek any medical treatment for his right knee soon after the incident in question. Obviously, this man was seen by his primary care physician on 12-5-17 and there is no reference made whatsoever regarding any sort of knee issue. In fact, he had a normal gait and station being that he had no ambulatory abnormality. It is completely outside of the realm of medical probability that this man would have sustained an acute medial meniscus tear necessitating surgery, but yet have a normal

April 22, 2020
Page 9
Ms. Scheumann

Re: Woods v. Target

gait pattern and no clinical findings a week after the event in question.

The patient was seen on 12-20-17 at the pain management office. At that point in time the knees were non-tender and stable. No diagnosis was made regarding any sort of knee issue. The patient was seen again on 12-22-17. The knees were noted to be non-tender and stable. No diagnosis was made regarding any sort of knee injury. The first comment in these records that states anything about right knee pain was 12-26-17. Obviously, it is completely and totally out of the realm of medical probability that this man would have sustained a surgical injury to his right knee, but yet voice no symptoms to any medical caregiver until one month later.

The patient obviously had an MRI scan performed of the right knee. It needs to be realized that the configuration of the meniscus pathology is what is known as a complex tear as noted in the operative report. What this means is that the tear is in more than one plane. Complex tears are typically degenerative in nature and not acute. The fact that the patient did not sustain a complex tear to the medial meniscus at the time of the accident in question explains why he did not voice any symptoms to the knee for a month.

I am not questioning the presence of a medial meniscus pathology. It just simply needs to be realized that the tear is of a degenerative configuration and the arthroscopy performed to treat the tear was

April 22, 2020
Page 10
Ms. Scheumann

Re: Woods v. Target

not directly related to the subject accident. If it was, the chronology of the medical records would have been different.

In summary, Larry Woods, from a historical perspective, was involved in a reported slip and fall event on 12-27-17. He then apparently went back to the store and reported the event three days later. He went to see his primary care physician about a week after the event in question and he was diagnosed with a chronic low back issue. Certainly, it is reasonable to believe that the patient sustained a mild low back strain superimposed upon his previous documented low back issues and diagnosis of right sciatica. He has completely recovered from the low back strain of 11-27-17 and is left with no permanent sequela. Mr. Woods does have an arthritic back and it would not surprise me if he has chronic back pain, but it is not related to the muscular injury of 11-27-17. The medical records are not consistent with Mr. Woods having sustained any acute injury to his right knee with respect to a medial meniscus tear. Medial meniscus tears are instantaneously symptomatic and it is completely outside of the realm of medical probability that he would not have voiced any symptoms involving the right knee until a month after the reported injury. All treatment involving the knee is unrelated to the accident in question for all the reasons outlined above. Mr. Woods is completely recovered from the event in question and is left with no permanent sequela.

Obviously, Mr. Woods is trying to relate his low back and knee issues to the 11-27-17 reported injury, but this is not substantiated by the medical records.

April 22, 2020
Page 11
Ms. Scheumann

Re: Woods v. Target

All professional opinions reflected within this medical records review report are within a reasonable degree of medical probability.

If additional medical records become available to me regarding this individual I will update my findings.

Should you have any questions regarding this medical record review please feel free to contact me.

Sincerely,

Arthur F. Lee, M.D.


AFL: clr